UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KEVIN FEDER, M.D., INC., | Case No. 24-cv-4236 (LMP/SGE) |
| Plaintiff, | |
| v. | **ORDER GRANTING U.S. BANCORP'S MOTION TO DISMISS** |
| U.S. BANCORP and DOES 1–10, | |
| Defendants. | |

Jonathan Stieglitz, **Stieglitz Law, Los Angeles, CA**, and Mark J. Carpenter, **Carpenter Law Firm PLLC, Bloomington, MN**, for Plaintiff.

Daniel J. Supalla, **Nilan Johnson Lewis PA, Minneapolis, MN**, Mathew J. McKenna, **Morgan, Lewis & Bockius LLP, Washington, D.C.**, and Sean K. McMahan, **Morgan Lewis & Bockius LLP, Dallas, TX**, for Defendant U.S. Bancorp.

Plaintiff Kevin Feder, M.D., Inc. ("Feder") brought this action to recover benefits due under the terms of an employer-sponsored health plan governed by the Employee Retirement Income Security Act ("ERISA"). ECF No. 1-1; *see* 29 U.S.C. § 1132(a)(1)(B). Defendant U.S. Bancorp moved to dismiss the complaint. ECF No. 34. For the following reasons, the Court grants U.S. Bancorp's motion but grants Feder leave to amend its complaint within 30 days.

**FACTUAL BACKGROUND**

Feder is a provider of medical services to R.M., a beneficiary of the U.S. Bank Medical and Wellness Plan (the "Plan"). *See* ECF No. 1-1 ¶¶ 1, 14, 19–24; *see generally*

1

ECF No. 37-1.[1]  The Plan is an employer-sponsored health plan governed by ERISA.  *See* ECF No. 37-1 at 9.  The Plan's third-party claims administrator is United Healthcare Services, Inc. ("UHS").  *Id.* at 38; ECF No. 1-1 ¶ 3.

From January 6, 2020, through July 17, 2023, Feder provided R.M. with a range of medical services, including surgery, injections, and physical therapy.  ECF No. 1-1 ¶ 19. Prior to providing medical services to R.M., Feder obtained an assignment from R.M. which transferred R.M.'s right to receive benefits from the Plan to Feder.  *Id.* ¶ 15.

However, the Plan explicitly prohibits such assignments.  The 2020 and 2021 Summary Plan Descriptions ("SPD") for the Plan provide:

> You may not assign your benefits under the plan or any cause of action related to your benefits under the plan to a non-network provider without UnitedHealthcare's consent. . . .
>
> When UnitedHealthcare has not consented to an assignment, UnitedHealthcare will send the reimbursement directly to you (the employee) for you to reimburse the non-network provider upon receipt of their bill.  However, UnitedHealthcare reserves the right, in its discretion, to pay the non-network provider directly for services rendered to you.  When exercising its discretion with respect to payment, UnitedHealthcare may consider whether you have requested that payment of your benefits be made directly to the non-network provider . . . .  Direct payment to a non-network provider shall not be deemed to constitute consent by UnitedHealthcare to an assignment or to waive the consent requirement.  When UnitedHealthcare in its discretion directs payment to a non-network provider, you remain the sole beneficiary of the payment, and the non-network provider does not thereby become a beneficiary.  Accordingly, legally required notices concerning your benefits will be directed to you, although

---

[1] The Court may consider Plan documents in deciding the motion to dismiss because they are "necessarily embraced by the complaint."  *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1045 (D. Minn. 2009).

2

> United Healthcare may in its discretion send information concerning the benefits to the non-network provider as well.

ECF No. 37-1 at 96, 205.  The 2022 and 2023 SPDs contain a similar anti-assignment clause:

> You may not assign, transfer or in any way convey your benefits under the plan or any cause of action related to your benefits under the plan to a provider or to any other third party. Nothing in this plan shall be construed to make the plan, Plan Sponsor, or claims administrator or its affiliates liable for payments to a provider or to a third party to whom you may be liable for payments for benefits.
>
> The plan will not recognize claims for benefits brought by a third party.  Also, any such third party shall not have standing to bring any such claim independently, as a covered person or beneficiary, or derivatively, as an assignee of a covered person or beneficiary. . . .
>
> As a matter of convenience to a covered person, and where practicable for the claims administrator (as determined in its sole discretion), the claims administrator may make payment of benefits directly to a provider.
>
> Any such payment to a provider:
>
> - Is not an assignment of your benefits under the plan or of any legal or equitable right to institute any proceeding relating to your benefits; and
>
> - Is not a waiver of the prohibition on assignment of benefits under the plan; and
>
> - Shall not estop the Plan, Plan Sponsor, or claims administrator from asserting that any purported assignment of benefits under the plan is invalid and prohibited.

*Id.* at 311, 430–31.

Feder billed U.S. Bancorp for nearly $550,000 in medical services for R.M. ECF No. 1-1 ¶ 21. After the procedures, Feder submitted a bill to U.S. Bancorp and UHS which stated that Feder had received an assignment from R.M. *Id.* ¶ 24. Evidently, Feder's claims were largely denied, as Feder was reimbursed only $30,000 for R.M.'s medical expenses. *Id.* ¶ 22. Over the next several months, Feder sent "numerous" appeal letters to U.S. Bancorp "through UHS" for payment of the claims. *Id.* ¶ 26. Feder alleges that it sent "UHS on behalf of [U.S. Bancorp]" a copy of the assignment between R.M. and Feder. *Id.* ¶ 27. This document told UHS that if the Plan had an anti-assignment provision, then the Plan should inform Feder. *Id.* Feder alleges that it would attempt to obtain payment based on the assignment if U.S. Bancorp or UHS did not inform Feder that the Plan had an anti-assignment provision. *Id.*

Feder alleges that throughout the appeal process, neither UHS nor U.S. Bancorp informed Feder of the Plan's anti-assignment provision. *Id.* ¶ 28. Feder alleges that its administrative remedies have been exhausted because "[Feder] sent out multiple appeal letters to [U.S. Bancorp] and any further appeals would be futile as [Feder] has received letters stating that [U.S. Bancorp's] decision is final." *Id.* ¶ 18; *see also id.* ¶ 29 ("[U.S. Bancorp] has made clear that [Feder] has no further administrative remedies."). Feder accordingly brought this action to recover R.M.'s benefits due under the Plan.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d

787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I.      **Enforcement of the Plan's Anti-Assignment Clause**

ERISA authorizes civil actions by a plan "participant" or "beneficiary" to recover benefits due under a plan. *See* 29 U.S.C. § 1132(a)(1). Because healthcare providers are not plan participants or beneficiaries, they are "generally not authorized under ERISA to sue on their own behalf, even if they are entitled to direct payment from the plan administrator by virtue of the plan's obligation to the patient and beneficiary." *Peterson ex rel. E v. UnitedHealth Grp. Inc.*, 913 F.3d 769, 774–75 (8th Cir. 2019). However, an assignee of health plan benefits may sue under 29 U.S.C. § 1132(a)(1) for wrongful denial of a benefit claim, "provided the assignment was authorized by the ERISA plan." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1039 (8th Cir. 2016).

ERISA plans may prohibit the assignment of benefits through anti-assignment clauses, which are "valid and enforceable." *Id.* A proper anti-assignment clause divests a healthcare provider of statutory standing to pursue a benefits-due claim on behalf of its patient. *See Peterson*, 913 F.3d at 773 n.3. U.S. Bancorp asserts that the anti-assignment clause in the Plan prohibits Feder from pursuing this ERISA action on behalf of R.M. ECF No. 36 at 7–14. Feder does not dispute that the anti-assignment clause in the Plan prohibits the type of assignment it executed with R.M. *See* ECF No. 41 at 4–5. However, Feder

5

asserts that U.S. Bancorp waived enforcement of the anti-assignment clause by failing to raise it during the claims appeal process. *Id.* at 4–8.

### a. Legal Standard for Waiving an Anti-Assignment Clause

Federal courts have taken different approaches to evaluating waiver in the context of anti-assignment clauses in ERISA plans. On one end of the spectrum, the Ninth Circuit has held that a plan waives enforcement of an anti-assignment clause if the plan is informed by the provider of an assignment and proceeds to process claim payments to the provider. *See Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 440–41 (9th Cir. 2020). In such circumstances, the plan's "silence and payment" is "inconsistent with an intent to enforce the anti-assignment clause." *Id.* (citation omitted) (internal quotation marks omitted). On the other end of the spectrum, the Fourth Circuit has concluded that waiver is a "prohibited concept[]" with respect to ERISA. *See Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008). The Eighth Circuit has suggested in passing that a plan may waive an anti-assignment clause through its conduct, although it has not defined the contours of such a waiver with any specificity. *See Lutheran Med. Ctr. of Omaha v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994) ("Because the Plan's actual practice is not in conformity with its strict anti-assignment provision, we conclude that nothing in the contract precludes a finding that [plaintiffs] have standing as assignees.").

Most courts have fashioned ERISA waiver rules somewhere within the broad spectrum created by the rules of the Fourth and Ninth Circuits. The majority of courts accept that an ERISA plan may waive enforcement of an anti-assignment clause under

6

certain circumstances. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453–54 (3d Cir. 2018); *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935–36 (11th Cir. 2021); *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 285–87 (E.D.N.Y. 2021); *Hoogenboom v. Trs. of Allied Servs. Div. Welfare Fund*, 593 F. Supp. 3d 826, 835–36 (N.D. Ill. 2022); *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 925–26 (M.D. Tenn. 2013). These courts apply a common-law definition of waiver, which in Minnesota[2] is the "intentional relinquishment of a known right." *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011). Waiver may be express or implied: "knowledge may be actual or constructive and the intent to waive may be inferred from conduct." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009) (citation omitted).

Under this framework, a plan's payment of claims to an assignee, by itself, does not waive an anti-assignment clause. *See Am. Orthopedic & Sports Med.*, 890 F.3d at 454; *Neurological Surgery*, 511 F. Supp. 3d at 286; *Hoogenboom*, 593 F. Supp. 3d at 835; *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 122–23 (S.D.N.Y. 2016). Nor will "routine processing" of a claim or appeal waive an anti-assignment clause. *Am. Orthopedic & Sports Med.*, 890 F.3d at 454; *see Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-cv-33 (KAD), 2024 WL 988162, at *2 (D. Conn. Mar. 7, 2024); *Podiatric OR of Midtown Manhattan, P.C. v. UnitedHealth Grp., Inc.*, No. 15-cv 3234 (DSD/HB), 2016

---

[2]   Except where federal law is controlling, the Plan is "construed and enforced in accordance with the laws of the State of Minnesota." ECF No. 37-1 at 6.

7

WL 126362, at *3 (D. Minn. Jan. 11, 2016) (plan's "routine, ministerial conduct" in engaging with the assignee does not waive an anti-assignment clause).

However, waiver is more likely to be found when the assignee and the plan have a long-standing course of dealing prior to the litigation. *See Productive MD*, 969 F. Supp. 2d at 922–26 (eight-year relationship between assignee and plan where plan paid assignee for hundreds of claims); *Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 08-cv-6160 (JAG), 2009 WL 3233427, at *5 (D.N.J. Sept. 30, 2009) (regular pre-authorization interactions between assignee and plan discussing specific patient details); *Classic Air Care, LLC v. Aetna Life Ins. Co.*, No. 2:20-cv-00506-TC, 2021 WL 199286, at *5 (D. Utah Jan. 20, 2021) (two years of interactions between assignee and plan, during which the plan agreed to work with the assignee on processing the claim). Waiver is also more likely if the plan knows that the provider has received an assignment and nonetheless proceeds to process the claim. *Classic Air Care*, 2021 WL 199286, at *5; *Productive MD*, 969 F. Supp. 2d at 922–26; *Hoogenboom*, 593 F. Supp. 3d at 835.

The Court is persuaded by this weight of authority because it harmonizes the Eighth Circuit's tacit recognition of waiver in the ERISA context, *Lutheran Med. Ctr. of Omaha*, 25 F.3d at 619, with the ordinary, common-law conception of waiver.[3] Indeed, Feder does

---

[3] In a case involving waiver of policy language in an ERISA case, the Eighth Circuit quoted the common-law definition of waiver, strengthening the conclusion that the Court should adopt that definition in ruling on Feder's waiver argument. *See Farley v. Benefit Tr. Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir. 1992). In *Farley*, the Eighth Circuit declined to decide whether waiver can be asserted in ERISA cases, but determined that if it could, it did not apply in that case because the defendant had not "expresse[d] any intention to surrender its right to enforce applicable provisions of the policy." *Id.*

not argue that the Court should apply a different standard of waiver than the one expressed in the common law. ECF No. 41 at 6–7. Accordingly, guided by the weight of authority described above, the Court will analyze whether Feder has plausibly alleged that U.S. Bancorp has intentionally relinquished a known right.[4] *Frandsen*, 801 N.W.2d at 182.

### b. Application of the Waiver Doctrine to Feder's Allegations

To the extent Feder generally alleges that it sent bills to U.S. Bancorp, filed appeal letters with U.S. Bancorp, received partial payment from U.S. Bancorp, or generally communicated with U.S. Bancorp about the claims, those actions represent "routine processing" of Feder's claims and appeals that do not demonstrate U.S. Bancorp's intentional relinquishment of the right to enforce the Plan's anti-assignment clause. *Am. Orthopedic & Sports Med.*, 890 F.3d at 454; *see Podiatric OR of Midtown Manhattan, P.C.*, 2016 WL 126362, at *3.

But Feder alleges more. Feder also alleges that it sent a copy of the assignment to "UHS on behalf of [U.S. Bancorp]," which stated that if R.M.'s health plan had an anti-assignment clause, UHS or U.S. Bancorp should inform Feder. *Id.* ¶ 27. Feder alleges that during the claims and appeal process, neither UHS nor U.S. Bancorp revealed the existence of an anti-assignment clause in the Plan. *Id.* ¶ 28. This conduct seems to take the allegations of this case beyond the facts of the cases cited by U.S. Bancorp.

---

[4]   On the morning of March 18, 2025—the day of oral argument on U.S. Bancorp's motion—Feder filed a notice of supplemental authority, pointing to a case that had been decided more than a month prior. ECF No. 48. Because U.S. Bancorp did not have adequate time to respond to this supplemental authority, the Court does not consider it in ruling on the motion.

9

Nevertheless, even assuming that this conduct substantively pleads waiver, the Court finds that Feder's complaint must be dismissed. When waiver is found, that finding is based "on the actions of the party against whom waiver was sought or its agents." *Safety Signs, LLC v. Niles-Wiese Constr. Co.*, 840 N.W.2d 34, 42–43 (Minn. 2013). And courts have concluded that an assignee's communications with a third-party claims administrator cannot necessarily be imputed to the plan sponsor for waiver purposes. *See Griffin v. Habitat for Human. Int'l, Inc.*, 641 F. App'x 927, 932 (11th Cir. 2016) (explaining that assignee's contacts with a third-party claims administrator did not demonstrate waiver with respect to the plan sponsor); *Griffin v. Verizon Commc'ns, Inc.*, 641 F. App'x 869, 874 (11th Cir. 2016) (same).

As U.S. Bancorp astutely points out, ECF No. 45 at 6–8, Feder alleges that it sent a copy of the assignment (with the request to confirm the existence of an anti-assignment provision) to "UHS on behalf of [U.S. Bancorp]," ECF No. 1-1 ¶ 27. Although this allegation is vague, Feder acknowledged at oral argument that it did not provide a copy of the assignment directly to U.S. Bancorp (the plan sponsor) but provided it to UHS (the third-party claims administrator) in its capacity as U.S. Bancorp's purported agent. *See id.* ¶¶ 3, 5 (alleging that UHS "is and was [U.S. Bancorp's] agent and representative"); ECF No. 21 at 8 ("[UHS] acted on behalf of [U.S. Bancorp] such that [UHS's] actions which demonstrate waiver . . . are equally applicable to [U.S. Bancorp]."). Because Feder did not send the assignment notice to U.S. Bancorp directly, it cannot show waiver based "on the actions of the party against whom waiver [is] sought"—here, U.S. Bancorp. *Safety Signs*, 840 N.W.2d at 42–43; *see Habitat for Human. Int'l*, 641 F. App'x at 932; *Verizon*

10

*Commc'ns*, 641 F. App'x at 874. Instead, Feder must rely on a theory of waiver by the party with which Feder actually engaged—U.S. Bancorp's purported agent, UHS.

But "[i]n order to rely upon an agency theory, a plaintiff must plead facts demonstrating the elements of an agency relationship." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 873 (D. Minn. 2012). Those elements are (1) manifestation of consent by the principal; (2) acquiescence by the agent; and (3) control exerted by the principal over the agent. *Id.* at 872. A "bare legal conclusion of agency" does not adequately plead the existence of an agency relationship. *Erickson v. Horing*, No. 99-cv-1468 (JRT/FLN), 2001 WL 1640142, at *12 (D. Minn. Sept. 21, 2001); *see Iqbal*, 556 U.S. at 678 (cleaned up) (citation omitted) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").

Here, Feder's complaint contains no factual allegations demonstrating that UHS was U.S. Bancorp's agent for purposes of administering Feder's claim or responding to Feder's inquiries regarding the existence of an anti-assignment provision. All Feder offers are "bare legal conclusion[s] of agency." *Erickson*, 2001 WL 1640142, at *12; *see* ECF No. 1-1 ¶ 3 (alleging that UHS "is and was [U.S. Bancorp's] agent and representative in connection with stating the manner of payment for medical services and providing other administrative services relating to [R.M.'s] and [U.S. Bancorp's] health plan"); *id.* ¶ 5 ("DEFENDANT/s were the agents and/or employees of each of the remaining defendants and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent.").

11

In sum, Feder fails to plead waiver based on U.S. Bancorp's own actions as described in Feder's complaint, and it fails to sufficiently plead an agency relationship between U.S. Bancorp and UHS that would permit a finding of U.S. Bancorp's waiver under an agency theory. Because Feder does not sufficiently plead a theory of waiver, there is no dispute that the Plan's anti-assignment clause divests Feder of statutory standing to sue for R.M.'s benefits. Accordingly, the Court must dismiss the complaint because Feder is not authorized to bring its benefits-due claim under ERISA. *See Peterson*, 913 F.3d at 773 n.3.

## II.  Leave To Amend

Feder did not formally move for leave to amend the complaint but expressed a desire to amend in the event the Court granted U.S. Bancorp's motion to dismiss. ECF No. 41 at 11. Although the Court is well within its discretion to deny informal requests for leave to amend stated in opposition to a motion to dismiss, *see United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822–23 (8th Cir. 2009), the Court will grant Feder leave to amend its complaint within 30 days, given that the deficiencies in Feder's complaint do not appear to be incurable. *See Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 832 (D. Minn. 2012) (explaining that dismissal without leave to amend is appropriate when a pleading is "so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading"); *cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Although the Court need not decide whether the conduct alleged by Feder substantively pleads waiver, in the interest of streamlining further briefing on Feder's

12

anticipated amended complaint, the Court observes that assuming the truth of Feder's allegations and drawing all reasonable inferences in Feder's favor, *Gorog*, 760 F.3d at 792, Feder has plausibly alleged conduct that constitutes waiver of the anti-assignment clause by UHS. Feder has alleged that it informed UHS that it was an assignee of R.M.'s benefits and that UHS or U.S. Bancorp should have informed Feder if R.M.'s health plan had an anti-assignment clause. ECF No. 1-1 ¶¶ 24, 27. When Feder asked in writing for confirmation of an anti-assignment clause, neither UHS nor U.S. Bancorp responded. This sufficiently pleads actual knowledge by UHS of the right to enforce the anti-assignment clause. *See Valspar Refinish*, 764 N.W.2d at 367.

As for the intentionality of the waiver, the intent to waive "need not be proved by express declaration or agreement." *Engstrom v. Farmers & Bankers Life Ins. Co.*, 41 N.W.2d 422, 424 (Minn. 1950). Rather, intent may be inferred from "conduct" or "acquiescence." *In re Civ. Commitment of Giem*, 742 N.W.2d 422, 432 (Minn. 2007). "When a party acts in a way that is inconsistent with" its rights, waiver may be inferred. *Valspar Refinish*, 764 N.W.2d at 367.

Here, according to Feder, UHS was notified on several occasions of the assertion of an assignment right, and Feder asked UHS to notify Feder if there was an anti-assignment clause in the Plan. ECF No. 1-1 ¶¶ 24, 27. However, despite being aware of its anti-assignment rights, despite being aware that Feder was an assignee, and despite being asked to confirm the existence of an anti-assignment clause (which is perhaps the most important

factual allegation that Feder makes),[5] UHS failed to act on U.S. Bancorp's right to enforce the anti-assignment provision for three years after receiving notice of assignment. *Id.* ¶ 28. Assuming these facts are true, Feder has plausibly alleged an act "inconsistent" with the right to enforce the anti-assignment clause. *Valspar Refinish*, 764 N.W.2d at 367; *see Giem*, 742 N.W.2d at 432 (holding that waiver may be inferred from acquiescence); *Classic Air Care*, 2021 WL 199286, at *5 (knowledge of a provider's status as an assignee, coupled with failure to enforce an anti-assignment clause, plausibly pleads waiver); *see also* 13 Samuel Williston, Williston on Contracts § 39:35 (4th ed., May 2024 Update) (footnotes omitted) ("[S]ilence or inaction, coupled with knowledge by the party charged with a waiver that the contract's terms have not been strictly met, and detrimental reliance by the other, for such a length of time as to manifest an intention to relinquish the known right, may result in a waiver of rights under the contract.").

The Court further notes that "[w]hether a party possessed an intent to waive is generally a question of fact that rarely should be inferred as a matter of law." *State ex rel. Swanson v. 3M Co.*, 845 N.W.2d 808, 819 (Minn. 2014). This question of fact—which cannot be resolved on a motion to dismiss, *see Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir 1981)—is sufficient to get Feder past the early motion-to-dismiss stage.

Relying on Ninth Circuit caselaw, U.S. Bancorp asserts that there is a "difference between asserting an anti-assignment provision as a basis for the denial of benefits and

---

[5] Indeed, in all of the cases cited by U.S. Bancorp, there was no indication that the plaintiff requested that the defendant confirm the existence of an anti-assignment clause and that the defendant failed to do so. *See* ECF No. 36 at 17–20. That factual allegation sets this case apart from the ones cited by U.S. Bancorp.

asserting an anti-assignment provision as a basis for defeating standing to bring a cause of action." ECF No. 45 at 5. U.S. Bancorp asserts that waiver is inapplicable to the latter situation, which U.S. Bancorp alleges is implicated by Feder's complaint. *Id.* at 4–6. Even assuming that there is "a meaningful distinction between asserting the anti-assignment provisions for purposes of claims denial and asserting them in order to preclude standing for a suit," courts in the Ninth Circuit recognize that this distinction "loses its salience if there has been activity undertaken in the pre-suit claims procedures that, irrespective of their relevance to the standing issue at present, should have triggered mention and/or invocation of these anti-assignment provisions." *Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*, No. 2:15-CV-01633-RGK-E, 2016 WL 7637666, at *7 (C.D. Cal. Aug. 30, 2016) (quoting *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1142 (C.D. Cal. 2015), *aff'd*, 720 F. App'x 862 (9th Cir. 2018). Feder alleges exactly that type of pre-suit conduct, so the distinction that U.S. Bancorp draws is one without a difference.[6]

---

[6] During oral argument, counsel for Feder mentioned that bills sent to UHS also noted that Feder had an assignment of benefits. This allegation is not contained within the complaint, but even if it were, the fact that bills sent to UHS noted the assignment is closer to alleging "routine processing" of a claim, rather than an affirmative request to confirm or deny the existence of an anti-assignment provision. *Am. Orthopedic & Sports Med.*, 890 F.3d at 454. That is particularly true given that the Plan explicitly states that payment of claims to an assignee is "not a waiver of the prohibition on assignment of benefits under the plan." *See* ECF No. 37-1 at 311. Nonetheless, if Feder can allege a pattern or practice of UHS paying R.M.'s claims to Feder despite the notations of the assignment on the bills sent to UHS, that may bolster Feder's argument for waiver. *See Glen Ridge Surgicenter, LLC*, 2009 WL 3233427, at *5; *Classic Air Care, LLC*, 2021 WL 199286, at *5.

Thus, although the conduct Feder alleges may substantively rise to the level of waiver, Feder has failed to demonstrate that the specific defendant here—U.S. Bancorp—participated in that conduct. The anti-assignment clause in the Plan thus divests Feder of statutory standing to seek recovery of R.M.'s benefits. *See Peterson*, 913 F.3d at 773 n.3.

Because the Court grants U.S. Bancorp's motion on standing grounds, it does not reach U.S. Bancorp's argument that the complaint fails to meet the Rule 8 pleading standard. Nonetheless, Feder is advised that its current complaint is perilously close to dismissal on Rule 8 grounds. It is to Feder's benefit to include greater factual detail in its amended complaint, rather than the vague, generalized allegations pleaded in the now-dismissed complaint.[7] The amended complaint should also remedy any factual inaccuracies in the current allegations, as Feder's counsel acknowledged at oral argument that the current complaint is inaccurate in some respects.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. U.S. Bancorp's Motion to Dismiss (ECF No. 34) is **GRANTED**;

---

[7] That said, the Court does not agree with U.S. Bancorp that Feder needs to plead granular details of each and every individual claim. *See Iqbal*, 556 U.S. at 678 (explaining that a complaint does not require "detailed factual allegations"); *Epic Reference Labs v. Cigna*, No. 3:19-cv-1326 (SRU), 2021 WL 4502836, at *12 (D. Conn. Sept. 30, 2021) (rejecting argument that a plaintiff was required to specifically allege services rendered or invoices at issue by, for example, including a "sampling, summary, or chart" in its pleadings).

16

2.	Feder may file an amended complaint curing the deficiencies identified in this Order within 30 days of the entry of this Order; and

3.	If Feder fails to file an amended complaint within 30 days of the entry of this Order, the complaint (ECF No. 1-1) will be **DISMISSED WITHOUT PREJUDICE**.

Dated: May 12, 2025							*s/Laura M. Provinzino*
										Laura M. Provinzino
										United States District Judge