UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KEVIN FEDER, M.D., INC., | Case No. 24-cv-4236 (LMP/SGE) |
| Plaintiff, | |
| v. | **ORDER GRANTING U.S. BANCORP'S MOTION TO DISMISS** |
| U.S. BANCORP and DOES 1–10, | |
| Defendants. | |

Jonathan Stieglitz, **Stieglitz Law, Los Angeles, CA**; and Mark J. Carpenter, **Carpenter Law Firm PLLC, Bloomington, MN**, for Plaintiff.

Daniel J. Supalla, **Nilan Johnson Lewis PA, Minneapolis, MN**; Mathew J. McKenna, **Morgan, Lewis & Bockius LLP, Washington, D.C.**; and Sean K. McMahan, **Morgan Lewis & Bockius LLP, Dallas, TX**, for Defendant U.S. Bancorp.

Plaintiff Kevin Feder, M.D., Inc. ("Feder") brought this action to recover benefits due under the terms of an employer-sponsored health plan governed by the Employee Retirement Income Security Act ("ERISA"). ECF No. 1-1; *see* 29 U.S.C. § 1132(a)(1)(B). Defendant U.S. Bancorp moved to dismiss the original complaint. ECF No. 34. The Court granted U.S. Bancorp's motion to dismiss but granted Feder leave to amend the complaint. ECF No. 52. Feder filed an amended complaint, ECF No. 53, which U.S. Bancorp moves to dismiss, ECF No. 54. For the following reasons, U.S. Bancorp's motion is granted, and the amended complaint is dismissed with prejudice.

**FACTUAL BACKGROUND**

Feder is a provider of medical services to R.M., who is a beneficiary of U.S. Bancorp's Medical and Wellness Plan (the "Plan"). *See* ECF No. 53 ¶¶ 1, 15–16, 28–34;

1

*see generally* ECF No. 57-1.[1]  The Plan is an employer-sponsored health plan governed by ERISA.  *See* ECF No. 53 ¶ 23, ECF No. 57-1 at 9.  U.S. Bancorp is R.M.'s employer and the sponsor of the Plan.  ECF No. 53 ¶ 16; ECF No. 57-5 at 109.  The Plan's third-party claims administrator is United Healthcare Services, Inc. ("UHS").  ECF No. 53 ¶ 3; ECF No. 57-2 at 5.

From January 6, 2020, through July 17, 2023, Feder provided R.M. with a range of medical services, including surgery, injections, and physical therapy.  ECF No. 53 ¶ 28.  Prior to providing medical services to R.M., Feder obtained an assignment from R.M. which transferred R.M.'s right to receive benefits from the Plan to Feder.  *Id.* ¶ 35.

However, the Plan explicitly prohibits such assignments.  The 2020 and 2021 Summary Plan Descriptions ("SPD") for the Plan provide:

> You may not assign your benefits under the plan or any cause of action related to your benefits under the plan to a non-network provider without UnitedHealthcare's consent. . . .
>
> When UnitedHealthcare has not consented to an assignment, UnitedHealthcare will send the reimbursement directly to you (the employee) for you to reimburse the non-network provider upon receipt of their bill.  However, UnitedHealthcare reserves the right, in its discretion, to pay the non-network provider directly for services rendered to you.  When exercising its discretion with respect to payment, UnitedHealthcare may consider whether you have requested that payment of your benefits be made directly to the non-network provider . . . .  Direct payment to a non-network provider shall not be deemed to constitute consent by UnitedHealthcare to an assignment or to waive the consent requirement.  When UnitedHealthcare in its discretion directs payment to a non-

---

[1]     The Court may consider Plan documents in deciding the motion to dismiss because they are "necessarily embraced by the complaint."  *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1045 (D. Minn. 2009).

> network provider, you remain the sole beneficiary of the payment, and the non-network provider does not thereby become a beneficiary. Accordingly, legally required notices concerning your benefits will be directed to you, although UnitedHealthcare may in its discretion send information concerning the benefits to the non-network provider as well.

ECF No. 57-2 at 63, ECF No. 57-3 at 64–65. The 2022 and 2023 SPDs contain a similar anti-assignment clause:

> You may not assign, transfer or in any way convey your benefits under the plan or any cause of action related to your benefits under the plan to a provider or to any other third party. Nothing in this plan shall be construed to make the plan, Plan Sponsor, or claims administrator or its affiliates liable for payments to a provider or to a third party to whom you may be liable for payments for benefits.
>
> The plan will not recognize claims for benefits brought by a third party. Also, any such third party shall not have standing to bring any such claim independently, as a covered person or beneficiary, or derivatively, as an assignee of a covered person or beneficiary. . . .
>
> As a matter of convenience to a covered person, and where practicable for the claims administrator (as determined in its sole discretion), the claims administrator may make payment of benefits directly to a provider.
>
> Any such payment to a provider:
>
> - Is not an assignment of your benefits under the plan or of any legal or equitable right to institute any proceeding relating to your benefits; and
>
> - Is not a waiver of the prohibition on assignment of benefits under the plan; and
>
> - Shall not estop the Plan, Plan Sponsor, or claims administrator from asserting that any purported assignment of benefits under the plan is invalid and prohibited.

3

ECF No. 57-4 at 62, ECF No. 57-5 at 75–76.

Feder billed U.S. Bancorp for nearly $550,000 in medical services for R.M. ECF No. 53 ¶ 33. After the procedures, Feder submitted bills to UHS which stated that Feder had received an assignment from R.M. *Id.* ¶ 36. Feder also sent UHS a copy of the assignment between R.M. and Feder. *Id.* ¶ 44. UHS sent payment for some of R.M.'s claims to Feder without objecting to the assignment and without stating that R.M.'s plan contained an anti-assignment provision. *Id.* ¶¶ 37–39. However, most of Feder's claims were denied, as Feder was reimbursed only $30,000 for R.M.'s medical expenses. *Id.* ¶ 34. From 2020 to 2024, Feder sent "numerous" appeal letters to UHS for payment of the claims. *Id.* ¶ 40. In deciding these appeals, UHS did not state that R.M.'s plan contained an anti-assignment provision. *Id.* ¶ 45.

Feder alleges that its administrative remedies have been exhausted because "[Feder] sent out multiple appeal letters to UHS" and "any further appeals would be futile as [Feder] has received letters stating that UHS and therefore [U.S. Bancorp's] decision is final." *Id.* ¶ 27; *see also id.* ¶ 46 ("UHS . . . has made clear that [Feder] has no further administrative remedies."). Feder accordingly brought this action against U.S. Bancorp to recover R.M.'s benefits due under the Plan. *See* ECF No. 1-1.

In the original complaint, Feder alleged that U.S. Bancorp waived enforcement of the Plan's anti-assignment provision. *Id.* ¶ 16. U.S. Bancorp moved to dismiss Feder's original complaint and raised the Plan's anti-assignment provision as a defense to Feder's claims. ECF No. 34; *see* ECF No. 36 at 13–20. Specifically, U.S. Bancorp argued that it

4

could not have waived enforcement of the Plan's anti-assignment provision because Feder only communicated with UHS—not U.S. Bancorp—during the claims process. *See* ECF No. 45 at 10–12.

The Court agreed and granted U.S. Bancorp's motion. ECF No. 52. The Court explained that under Minnesota law, a finding of waiver is based "on the actions of the party against whom waiver was sought or its agents." *Id.* at 10 (quoting *Safety Signs, LLC v. Niles-Wiese Constr. Co.*, 840 N.W.2d 34, 42–43 (Minn. 2013)). Because it was undisputed that Feder only communicated with UHS, Feder could not show any actions "of the party against whom waiver was sought"—that is, U.S. Bancorp. *Id.* The Court also held that the original complaint had not plausibly alleged that UHS was U.S. Bancorp's agent, such that UHS's purported waiver of the anti-assignment provision could be imputed to U.S. Bancorp. *Id.* at 10–12. The Court therefore granted U.S. Bancorp's motion but granted Feder leave to amend the complaint to allege either (1) actions by U.S. Bancorp that would demonstrate waiver or (2) that UHS was U.S. Bancorp's agent. *Id.* at 12.

In the amended complaint, Feder has chosen the latter path, alleging that UHS was U.S. Bancorp's agent for purposes of reviewing and processing R.M.'s claims. *See generally* ECF No. 53. Feder alleges that UHS "has authority to act on behalf of [U.S. Bancorp] in all ways relating to claims for benefits." *Id.* ¶ 3. More specifically, Feder alleges that UHS has been "delegated authority and discretion to decide internal claims and appeals relating to ERISA claims for benefits." *Id.* ¶ 6. UHS, therefore, "would decide on behalf of [U.S. Bancorp] if payment will be made directly to a medical provider" and "whether or not to accept [an] assignment." *Id.* ¶¶ 8–9. Feder alleges that "UHS has

5

accepted the responsibility of providing all of these services and acting on behalf of [U.S. Bancorp]," and that U.S. Bancorp "has intentionally delegated all of these responsibilities to UHS because UHS has significant familiarity with health insurance and [U.S. Bancorp] is predominantly a banking institution." *Id.* ¶¶ 10–11.

U.S. Bancorp now moves to dismiss Feder's amended complaint. ECF No. 54. U.S. Bancorp argues that Feder has failed to plausibly allege an agency relationship between U.S. Bancorp and UHS. ECF No. 56 at 14–18. U.S. Bancorp also argues that Feder's amended complaint does not plausibly allege conduct that rises to the level of waiver and that the amended complaint is impermissibly vague. *Id.* at 18–30.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I.   Whether Feder Has Plausibly Alleged That UHS Was U.S. Bancorp's Agent

Because the amended complaint contains no allegations that Feder communicated directly with U.S. Bancorp during the claims process, the parties recognize that the threshold question in this case is whether Feder has plausibly alleged that UHS was U.S.

6

Bancorp's agent when processing R.M.'s claims. *See* ECF No. 56 at 14–18; ECF No. 62 at 5–14. If Feder has not plausibly alleged an agency relationship between U.S. Bancorp and UHS, then it cannot show U.S. Bancorp's waiver based "on the actions of . . . its agents." *Safety Signs*, 840 N.W.2d at 42–43.

"In order to rely upon an agency theory, a plaintiff must plead facts demonstrating the elements of an agency relationship." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 873 (D. Minn. 2012). Those elements are: (1) manifestation of consent by the principal; (2) acquiescence by the agent; and (3) control exerted by the principal over the agent. *Id.* at 872. Here, Feder's amended complaint fails to plausibly allege the third requirement: control.[2]

The "right of control" is a "critical element" of an agency relationship. *Jurek v. Thompson*, 241 N.W.2d 788, 791 (Minn. 1976). "The principal's right to control the agent must be extensive; the control must not merely be over what is to be done, 'but primarily over [h]ow it is to be done.'" *A.P.I., Inc. Asbestos Settlement Tr. v. Home Ins. Co.*, 877 F. Supp. 2d 709, 722 (D. Minn. 2012) (alteration in original) (quoting *Frankle v. Twedt*, 47 N.W.2d 482, 487 (Minn. 1951)); *see also T.S. v. Wyndham Hotels & Resorts, Inc.*, No. 23-cv-2530 (PJS/ECW), 2024 WL 3927382, at *5 (D. Minn. Aug. 23, 2024) ("In a principal-agent relationship, the principal has the ability to dictate not just *what* its agent must accomplish, but *how* its agent must go about accomplishing that contractual duty."). In

---

[2]   Because the amended complaint fails to plausibly allege the third element of an agency relationship under Minnesota law, the Court need not—and does not—decide whether the first two elements of an agency relationship are plausibly alleged.

7

other words, an entity's "mere designation of work" to another party does not give rise to an agency relationship; rather, "[d]etailed authoritative control" by the principal is required. *Urban ex rel. Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 160 (Minn. Ct. App. 2005) (alteration in original) (quoting *Nepstad v. Lambert*, 50 N.W.2d 614, 622 (Minn. 1951)).

Feder argues that U.S. Bancorp has the right to control UHS, ECF No. 62 at 7–11, but the amended complaint pleads the exact opposite. The amended complaint alleges that U.S. Bancorp "delegated authority and discretion to decide internal claims and appeals relating to ERISA claims for benefits" to UHS. ECF No. 53 ¶ 6. UHS, therefore, "decide[s] on behalf of [U.S. Bancorp] if payment will be made directly to a medical provider" and "whether or not to accept [an] assignment." *Id.* ¶¶ 8–9. Importantly, the amended complaint never alleges that U.S. Bancorp has any role—let alone a role of authoritative control—in processing the claims of R.M. or any other beneficiary of the Plan. Quite the opposite: UHS "decide[s]" based on its "delegated authority and discretion" whether to approve a particular claim and whether to accept an assignment. ECF No. 53 ¶¶ 6, 8–9. Because UHS, not U.S. Bancorp, "decides how [UHS] must go about" processing claims, an agency relationship does not exist between U.S. Bancorp and UHS. *T.S.*, 2024 WL 3927382, at *5.

The SPD further confirms UHS's discretion and authority to decide claims free from U.S. Bancorp's control. It explains that UHS "has the discretion to determine whether a service/procedure is medically necessary" and that "U.S. [Bancorp] has delegated to [UHS] the discretion and authority to decide whether a treatment or supply is a covered health

8

service and how the eligible expenses will be determined and otherwise covered under the plan." ECF No. 57-5 at 58, 77. None of this plausibly suggests that U.S. Bancorp has "[d]etailed authoritative control" over the processing of claims. *Urban*, 695 N.W.2d at 160. In fact, it suggests the opposite: that U.S. Bancorp has no role in controlling UHS's claims decisions.

Feder responds that U.S. Bancorp has a "right of control" over UHS because U.S. Bancorp has the right to terminate UHS as claims administrator. ECF No. 62 at 7. But, even if true, the right to terminate a contract is present in other non-agency relationships, including the relationship between a principal and an independent contractor. *See, e.g.*, *Clifton v. Am. Fam. Mut. Ins. Co.*, 507 F.3d 1102, 1103–04 (8th Cir. 2007). The bare fact that U.S. Bancorp can terminate UHS's status as claims administrator does not transform UHS into U.S. Bancorp's agent.

Feder next argues that U.S. Bancorp has a "right of control" over UHS because UHS was required to "abide by the terms of the Plan in connection with the services it provides." ECF No. 62 at 8. But that argument addresses only "what is to be done" by UHS, not "[h]ow it is to be done." *A.P.I.*, 877 F. Supp. 2d at 722. Although the Plan provides a general framework for how UHS is to approach its duties, it does not dictate how UHS is to go about the daily tasks of processing claims, making medical necessity determinations, accepting assignments of benefits, and calculating eligible expenses. Rather, as the SPD and Feder's own allegations make crystal clear, UHS possesses the discretion and authority to make those daily decisions. ECF No. 53 ¶¶ 6, 8–9; ECF No. 57-5 at 58, 77. U.S. Bancorp's loose control over UHS through the Plan does not plausibly allege an agency

9

relationship. *See Halsne v. Avera Health*, No. 12-cv-2409 (SRN/JJG), 2014 WL 1153504, at *8 (D. Minn. Mar. 21, 2014) (concluding that even when an entity had general control over the governance and policies of another organization, it could not establish a principal-agent relationship without control over the organization's daily activities); *Ciofoletti v. Securian Fin. Grp., Inc.*, No. 18-cv-3025 (JNE/ECW), 2020 WL 12863773, at *7 (D. Minn. Sept. 21, 2020) (concluding that financial advisors were not plausibly alleged to be agents of a marketing organization when the organization gave "some direction" to the advisors but did not have "control over their daily activities").

There is one final wrinkle to iron out: Feder argues in passing that an agency relationship may be imposed through a theory of apparent authority. ECF No. 62 at 13–14. A principal "is bound not only by the agent's actual authority but also by that which the principal has apparently delegated to him." *Duluth Herald & News Trib. v. Plymouth Optical Co.*, 176 N.W.2d 552, 555 (Minn. 1970). "Apparent authority is that authority which a principal holds an agent out as possessing, or knowingly permits an agent to assume." *Foley v. Allard*, 427 N.W.2d 647, 652 (Minn. 1988). Accordingly, to plausibly allege apparent authority, the "principal must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf," and "the party dealing with the agent must have actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf." *Id.* (citation omitted).

However, as the SPD makes plain, U.S. Bancorp did not hold out UHS as its agent, nor did it knowingly or tacitly allow UHS to act as its agent. Rather, the SPD states that

10

U.S. Bancorp delegated full discretion to UHS to decide claims, ECF No. 57-5 at 58, 77, defeating any claim that U.S. Bancorp exercised the element of control over UHS necessary to create an agency relationship. Moreover, Feder does not allege that it had "actual knowledge" that UHS was acting as U.S. Bancorp's agent. *See Foley*, 427 N.W.2d at 652. In fact, Feder pleads that it was fully aware of UHS's discretion and authority to decide claims and appeals, ECF No. 53 ¶¶ 6, 8–9, meaning that Feder knew that an essential element of an agency relationship between U.S. Bancorp and UHS was lacking. Feder therefore finds no refuge in its alternative argument for apparent authority.

Because Feder has not plausibly alleged that UHS was U.S. Bancorp's agent for purposes of processing R.M.'s claims and appeals, it cannot show that U.S. Bancorp waived enforcement of the Plan's anti-assignment provision through UHS. *Safety Signs*, 840 N.W.2d at 42–43. And because Feder cannot demonstrate waiver, it is undisputed that the Plan's anti-assignment clause divests Feder of statutory standing to sue for R.M.'s benefits. Accordingly, the Court must dismiss the amended complaint because Feder is not authorized to bring its benefits-due claim under ERISA. *See Peterson ex rel. E v. UnitedHealth Grp. Inc.*, 913 F.3d 769, 773 n.3 (8th Cir. 2019).

**II.    Dismissal With or Without Prejudice**

U.S. Bancorp seeks dismissal of Feder's amended complaint with prejudice, ECF No. 56 at 31, while Feder seeks leave to amend to cure any defects in the amended complaint, ECF No. 62 at 21. "Courts ultimately have discretion to decide between a dismissal with prejudice and one without prejudice." *Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 883 (D. Minn. 2024). Although a dismissal without prejudice is favored at

11

the pleading stage, "a dismissal with prejudice is appropriate when a plaintiff has shown persistent pleading failures despite one or more opportunities to amend or when the record makes clear that amendment would be futile." *Id.* (citation omitted) (internal quotation marks omitted).  Here, Feder had an opportunity to amend the complaint but did not remedy the pleading defects in the original complaint.  And based on Feder's own allegations and the plain language of the SPD, it is unlikely that Feder will ever be able to plausibly allege the "control" element necessary to establish an agency relationship between U.S. Bancorp and UHS.  ECF No. 53 ¶¶ 6, 8–9; ECF No. 57-5 at 58, 77.  Because it is improbable that Feder's claims "might conceivably be repleaded with success," the Court will dismiss the amended complaint with prejudice.  *Harris*, 729 F. Supp. 3d at 883 (quoting *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019)).

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. U.S. Bancorp's Motion to Dismiss (ECF No. 54) is **GRANTED**; and

2. Feder's amended complaint (ECF No. 53) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 2, 2025         *s/Laura M. Provinzino*
                                 Laura M. Provinzino
                                 United States District Judge